**In re FALK.**

No. 85441.

United States District Court
S. D. New York.

April 13, 1949.

I. Arthur Rosenberg, of New York City, for bankrupt.

Wood, Molloy, France & Tully, of New York City (Loren T. Wood, of New York City, of counsel), for claimants.

Jacob Frummer, of Brooklyn, N. Y., for trustee.

RYAN, District Judge.

Three petitions have been filed to review an order of the Referee in Bankruptcy. The Referee, by this order, dismissed the bankrupt's objections to the claim filed by claimants, Agnes Falk, Helen M. Steen and Iverna Buskerud (the widow and children of Peter H. Falk, deceased), reduced the claim and as so reduced allowed it in the amount of $14,600.33, and denied the Trustee's application for an order directing the bankrupt to execute and deliver to the Trustee the necessary consent to enable the latter to collect and obtain the cash surrender value available as of February 5, 1948 (the date of adjudication), on two life insurance policies issued on the life of the bankrupt.

The bankrupt, the claimants and the trustee have each filed a petition to review. The bankrupt is aggrieved because the claim was allowed at all; the claimants, because it was not allowed in full; and the trustee and claimants, because the former was held not entitled to receive the cash surrender value of the life insurance policies.

The referee found, upon ample evidence, that Peter H. Falk, a deceased brother of the bankrupt and a resident of Minnesota, "loaned and advanced to the bankrupt on twenty occasions between October 15, 1923 and October 7, 1929 divers sums of money aggregating $7,850., evidenced by separate non-interest bearing promissory notes made and mailed by the bankrupt in New York to his brother, each payable one year after date at * * * Sherman, South Dakota;" that of this total "the amount loaned and advanced prior to March 31, 1927 aggregated $5,300.;" that no part of this debt had been paid on January 1, 1931, when "the bankrupt in New York executed a promissory note bearing that date to his brother for $10,000, payable one year after date with interest at 6% at the First National Bank at Garretson, South Dakota, together with his check for $400, and mailed both

instruments to his brother who received and accepted them and returned to the bankrupt eighteen of the previous notes which were all the brother then had;" that the total of the note and check so given to meet the demand of the brother, "was the equivalent of the principal amount of the indebtedness with interest at 6% compounded annually from the dates of the prior notes, and the bankrupt thereby intended to meet the demand of his brother;" and that "the interest on the prior notes from the respective dates of maturity to January 1, 1931 amounted to $1,735. which with the principal of $7,850. aggregated a total debt of $9,585., reduced on that date to $9,185."

The referee also found that the bankrupt's brother, Peter H. Falk, died on February 13, 1935; that "the bankrupt's note dated January 1, 1931 was assigned to and vested in the claimants;" and that "in January, 1932 and again in January 1933 the bankrupt paid to his brother the sum of $600., such amount being the equivalent of interest at 6% for one year upon the note dated January 1, 1931, and in March, 1936 the bankrupt paid to his brother's estate the sum of $300. on the indebtedness."

In addition, the referee found that on February 1, 1937, "the bankrupt made and mailed in New York to the claimant Agnes Falk, widow and administratrix of the decedent's estate, his promissory note for $11,500. payable one year after date with interest at 6% at the First National Bank, Garretson, South Dakota, together with his check payable to said estate in the sum of $878.25 and such check was collected by the administratrix;" that "the aggregate of such note and check was the equivalent of the principal sum of the note dated January 1, 1931 with interest at 6% compounded annually from January 1, 1933, less the payment made in March, 1936;" and that, "thereafter, between February 9, 1938 and April 28, 1941 the bankrupt paid an aggregate amount of $2,190. on account of the indebtedness."

The referee found that "the bankrupt is the owner of two insurance policies on his life each payable to a third party beneficiary, one issued by the Metropolitan Life Insurance Company on December 8, 1931 and the other by the Equitable Life Assurance Society on December 20, 1938, and those policies had an aggregate cash surrender value of $5,870.85 at the date of bankruptcy."

Upon these findings the referee concluded that "1. the claim should be allowed in the sum of $14,600.33," and "2. the trustee's petition should be dismissed."

1. We shall first consider the referee's ruling with respect to the allowance of the claim—

The proof of claim alleges that the bankrupt is indebted to the claimants in the sum of $11,500 plus interest from February 1, 1938, less the sum of $2,190 paid on account, upon a promissory note made by the bankrupt to the order of Peter H. Falk, the claimants' predecessor in interest, dated February 1, 1937, in the face amount of $11,500. As consideration for the note it is alleged that between October 15, 1923, and October 7, 1929, Peter H. Falk loaned sums of money to the bankrupt aggregating $7,850 and that each loan was evidenced by a promissory note made by the bankrupt. On January 1, 1931, the bankrupt "substituted for the said notes, which were returned to the debtor," a note in the sum of $10,000 made by the bankrupt payable to the order of Peter H. Falk and at the same time paid $400 in cash. On February 1, 1937, the bankrupt substituted for the aforesaid note dated January 1, 1931, a new note dated February 1, 1937, payable to the order of the "Peter H. Falk, Estate" in the amount of $11,500 and at the same time paid $878.25 in cash to said estate.

The bankrupt moved to disallow and expunge the claim upon the ground that the claim did not "set forth with sufficient particularity the consideration for the promissory note described in said proof of claim," that the claim was on its face "barred by the Statute of Limitations of the State of New York," and that the claim is based upon a transaction tainted with usury and therefore illegal. The amended proof of claim has met the objection as to sufficiency. It also sets forth that payments on the note were made up to April 28, 1941. The referee has found that the bankrupt was in military service

in the United States Navy from June, 1942 to July, 1946; clearly, the claim is not barred by the Statute of Limitations. Civil Practice Act N.Y. § 48; Cf. Shoemaker v. Benedict, 11 N.Y. 176, 62 Am.Dec. 95; Hoover v. Hubbard, 202 N.Y. 289, 95 N.E. 702. We are only concerned then with whether the claim as alleged arises out of a usurious transaction.

On the hearing of the objections to the claim, the referee permitted the bankrupt to give testimony relating to the circumstances surrounding the making of the 1931 note and to conversations allegedly had between the bankrupt and his deceased brother, Peter. The claimants urge that the referee erred in admitting this evidence since, relating as it did to a personal transaction had with a deceased person—claimants' predecessor—the testimony was inadmissible under Section 347 of the New York Civil Practice Act. This section provides that a witness is incompetent to testify to a personal transaction except (1) "where the * * * survivor (of the deceased) * * * is examined in his own behalf"; or (2) "the testimony of the * * * deceased is given in evidence."

Since the proof of claim is not testimony of the deceased, the issue is whether it constitutes an examination of the claimants on their own behalf.

Claimants urge that although a proof of claim is of a dual nature serving as a pleading, as well as partaking "of the characteristics of evidence," it is not an "examination of the survivor in his own behalf," so as to "open the door" to testimony from the bankrupt concerning the transaction had with the deceased.

■ The Bankruptcy Act, 11 U.S.C.A. § 1 et seq., requires that a proof of claim include *evidence* supporting the claim, including a detailed statement of the consideration and other particulars to enable the referee to pass upon it intelligently. In re Century Silk Mills, Inc., D.C., 296 F. 713; Orr v. Park, 5 Cir., 183 F. 683; Collier on Bankruptcy, 14th Ed., V. 3, p. 125. When the proof of claim complies with these requirements it is "prima facie evidence of all its allegations." In re Arthur E. Pratt Co., D.C., 252 F. 917, 918. A proof of claim does more than merely shift the burden of going forward with proof on the objectant, it has probative force and "the formal proof is evidence even when put in issue." Whitney v. Dresser, 200 U. S. 532, 26 S.Ct. 316, 317, 50 L.Ed. 584. It is received as a sworn deposition of the claimant and is to be accepted as affirmative testimony given by him in support of the claim. It has a greater scope than a pleading in the usual case. The proof of claim gives evidence on behalf of the claimants relating to the transaction and therefore "the door is open to the survivor (the bankrupt, here) to testify fully in his own behalf in regard to that transaction." Cole v. Sweet, 187 N.Y. 488, 80 N.E. 355, 356. The testimony of the bankrupt was properly received and the referee was correct in his ruling. Jerry Vogel Music Co., Inc., v. Forster Music Publishers, Inc., 2 Cir., 147 F.2d 614; Trounstine v. Bauer Pogue & Co., 2 Cir., 144 F.2d 379.

■ 2. The validity and provable amount of the claim—

When passing upon the validity of the claim, the referee properly applied the law of this state in determining all questions concerning the execution, interpretation and validity of the notes and of the debt for which they were given. The notes were signed, executed and mailed in New York and the liability of the maker is to be measured by the law here. Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 19 N. E.2d 992; Restatement, Conflict of Laws, Secs. 314, 332.

■ The referee has stated in the opinion accompanying his findings that "to the extent that the 1931 note exceeded the principal sum and simple interest from the respective dates of maturity of the prior notes a recovery is prohibited," and that the "1937 note as an agreement to add the accumulated interest then accrued since 1931 to the remaining principal sum is governed likewise." The findings of the referee that the note of January 1, 1931, and that of February 1, 1937, were usurious is amply supported by proof and his findings are accepted. New York General Business Law, Secs. 370, 373; London v. Toney, 263 N.Y. 439, 442, 189 N.E. 485, 91

A.L.R. 1100; Ganz v. Lancaster, 169 N.Y. 357, 62 N.E. 413, 58 L.R.A. 151. After making these findings, the referee proceeded to compute the amount of the claim and when casting interest he correctly applied payments in accordance with the rules laid down in Haffey v. Lynch, 193 N.Y. 67, 71, 85 N.E. 817. The referee, however, in computing the interest regarded the notes of 1931 and 1937 as "promises in writing to add the accumulated interest to those respective dates." In this he erred.

The bargains of 1931 and 1937 providing as they did for a greater rate of interest than that permitted by law were illegal. They were void in toto. They cannot be separated into two parts—one invalid providing for the payment of compound interest from the dates of the notes, and the other legal providing for an account stated and the creating of a new and different obligation superseding and extinguishing the prior debt. The entire transactions of 1931 and 1937 were a nullity. The original transaction between the bankrupt and his brother was free from usury; it did not become usurious by the subsequent transaction, nor was it discharged by the usurious bargains attempted in renewal thereof or in substitution. These bargains were void, and the claimants have a provable claim based upon the original dealings had by the bankrupt and the deceased, Winsted Bank v. Webb, 39 N.Y. 325, 100 Am.Dec. 435, and this is so even though the original notes were surrendered to the bankrupt and cancelled. Patterson v. Birdsall, 64 N.Y. 294, 21 Am. Rep. 609.

The interest should have been computed without regard to the notes of 1931 and 1937.

3. We come finally to a consideration of the trustee's application to collect the cash surrender value of the two life insurance policies issued on the life of the bankrupt—

Here, we have to decide whether the making and the delivery of the new notes of 1931 and of 1937 and the transactions had at that time extinguished the prior indebtedness for the purposes of Section 166, formerly 55-a, of the New York Insurance Law, McK.Consol.Laws, C. 28. This statute protects the avails of insurance taken out by the insured upon his own life for the benefit of another as against the creditors of the insured, Sec. 55-a, effective March 31, 1927. It is settled that as to any debts incurred after March 30, 1927 the exemptions granted by the statute apply in favor of the bankrupt. In re Gordon, 2 Cir., 90 F.2d 583; Grimmer v. Brown, 2 Cir., 146 F.2d 806.

The referee has found that an indebtedness in the principal sum of $5,300. existed on March 31, 1927 for monies loaned and advanced prior to that date; with interest this amount due on March 31, 1927 apparently exceeded the cash surrender value of $5,870.85 of the two life insurance policies at the date of the adjudication.

We have held that the usurious notes of 1931 and 1937 did not extinguish the liability of the original obligation, for "nothing is better settled than when there was once a valid subsisting debt, that cannot be destroyed by a void or invalid security." Winsted Bank v. Weber, supra; Cf. Morris Plan Bank v. Faulds, Co.Ct., 47 N.Y.S.2d 920. These later notes created no new or additional obligation nor did they, in any way, affect the prior, subsisting valid claim, Cook v. Barnes, 36 N.Y. 520, for the monies advanced both before and after March 31, 1927.

The amount of principal and accumulated interest due on March 31, 1927 should be computed by the referee and included in his findings, as the measure of the trustee's interest in said policies. The trustee's application should be granted and the bankrupt directed to deliver and surrender the policies, or in lieu thereof to pay to the trustee their cash surrender value at the date of adjudication, to an extent no greater than the trustee's interest as so determined.

The matter is remanded to the referee to make further findings of fact as to the dates and amounts of advances made between October 15, 1923 and October 7, 1929, and to compute the interest on such

advances giving credit for payments, but in disregard of the notes of January 1, 1931 and February 1, 1937—all in conformity with the views herein expressed.

Settle orders on notice.